**U.S. BANKRUPTCY COURT**
District of South Carolina

Case Number: **12-02719-jw**

**ORDER**

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/02/2012**



*[signature: John E Waites]*

Chief US Bankruptcy Judge
District of South Carolina

Entered: 10/02/2012

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Gary M. Fickling,<br><br>Debtor(s). | C/A No. 12-02719-JW<br><br>Chapter 13<br><br>**ORDER** |

This matter comes before the Court for a hearing on confirmation of the Chapter 13 Plan filed by Gary M. Fickling ("Debtor"). Arlene Jones ("Jones") filed an Objection to Confirmation. In addition, the Court considered Debtor's Objection to Claim of Arlene Jones ("Claim Objection") and Jones's response thereto. After reviewing the pleadings and the arguments and evidence presented at the hearing on these matters, the Court makes the following findings of fact and conclusions of law:[1]

## **FINDINGS OF FACT**

1. Debtor and Jones were married on October 25, 1975.

2. The parties separated on or about October 14, 2002, and entered into a Property and Separation Agreement ("Agreement"). The Agreement was approved and adopted by a decree of divorce dated September 25, 2004, and filed in the Office of the Family Court for Sumter County, South Carolina on November 4, 2004.

3. Both parties were represented by counsel during the negotiation of the Agreement and during the divorce proceedings. The Agreement includes separate sections addressing alimony, property division, and division of a log home business developed, owned, and operated by the parties during their marriage.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are so adopted.

4. Section 3 of the Agreement is entitled "Alimony and/or Separate Maintenance and Support" and provides in part:

> The Husband will pay the wife $1,700 per month as permanent, periodic alimony.... This alimony payment is tax deductible by the husband pursuant to the Internal Revenue Service Regulations and is taxable to the wife as income. This alimony terminates upon the death of the husband, death of the wife, remarriage of the wife ... and is modifiable/terminable pursuant to the South Carolina law. The parties anticipate that the wife will have to work in order to meet her monthly needs and shortfall after the payment of alimony by the husband.

5. Section 6 of the Agreement is entitled "Equitable Division" and sets forth which real and personal property Debtor and Jones would divide. Pursuant to this section, Jones received the marital residence located at 5235 East Brewington Road, Sumter, SC and its contents, along with a 2002 Lincoln LS, which was subject to a lien, and a 1997 Ford Explorer, which was lien free. Debtor received both the home and its contents located at 3155 Myrtle Beach Highway, Sumter, SC, as well as a 2003 Z71 pick-up truck, a Dodge pick-up truck, and a 34 foot Coronado sailboat.

6. Section 8 of the Agreement is entitled "Business Interest and Buy-Out" and provides in part:

> B. Buy-Out: By way of equitable division, in order to purchase the wife's interest in each of these business entities, the husband shall pay to the wife $3,000 per month.... This payment shall continue for fifteen (15) years and will terminate thereafter.
>
> In addition to the above, the husband will pay to the wife 1.5% of all (outside) gross sales for the total sales exceeding $1,500,000.00 per year from any product by any of the aforementioned business entities or any other business opened or created, or equipment purchased or utilized, by the husband...for the purpose of the manufacture/sale of any home or cabin....
>
> The obligation to pay the $3,000 per month and the 1.5% of outside gross sales exceeding $1,500,000.00 to the wife is not dischargeable in bankruptcy by the husband and/or any of the

2

aforementioned entities. Provided, however, should the husband file Chapter 7 liquidation bankruptcy resulting from his inability to operate the above businesses, or any like type business(es), the husband's obligation may be dischargeable and his obligation under those circumstances, for equitable division to the wife, would be to pay off the existing mortgage on her home. It is the parties' intention for the husband to satisfy his equitable division obligation to the wife unless through some unforeseen calamity, he has to file Chapter 7 bankruptcy and is unable to operate the above businesses or business(es) similar to those listed above. The husband's obligation to wife as contained in this paragraph shall continue should the husband file bankruptcy and continue in any like type (log home) business(es) even though under another entity/individual's name. These payments to the wife are intended as equitable division and are therefore non-taxable, however, the parties acknowledge that the same are a source of support to the wife which will assist her in meeting monthly expenses; therefore, they are not dischargeable in bankruptcy except as specifically provided above.

Should the husband sell, transfer, devise, or gift any one part, or all, of the aforementioned businesses to any individual, entity, or corporation, then the wife's right to receive the 1.5% of (outside) gross sales exceeding $1,500,000.00 per year shall be a part of such sale, and the wife's entitlement shall attach to the sale,... and the wife's right to continue to receive 1.5% of gross sales exceeding $1,500,000.00 per year shall continue with each of the businesses upon sale and the terms of this agreement shall be binding upon all future purchasers of any one, part or all of the aforementioned businesses....

The husband's obligation to make this monthly payment of $3,000 and 1.5% of gross sales exceeding $1,500,000.00 per year payments to the wife, and the wife's right to receive such payments from the husband or any future owners of any of the aforementioned businesses, shall terminate 15 years from the date of the first payment. After payments for 15 years, the wife shall retain no further interest in the sales of any of these businesses or sale of any home of these businesses, and the husband or any future owner, shall then have exclusive ownership of such entities.

7.     The parties had two children together who were fully emancipated at the time of the divorce. Therefore, child support payments were not required under the Agreement.

8.     Debtor was required under the Agreement to maintain and pay for a health insurance policy for Jones.

3

9. Jones testified that at the time of the divorce, she was employed at a flower shop, making approximately $975 per month. Her total monthly income, including the $1,700 per month alimony payments from Debtor, was $2,675. She further testified that at the time of the divorce, she lived alone, her monthly house payment was approximately $604, and her monthly car payment was approximately $650. Without specifying the details of those expenses, Jones testified that her total monthly expenses were between $3200 and $3300. Jones also indicated that she used the $1,700 alimony payment in addition to her monthly income from her job to pay for her monthly expenses.

10. In June of 2006, Jones remarried and Debtor's obligation to pay monthly alimony and provide health insurance for Jones terminated pursuant to the Agreement.

11. For more than seven years, Jones did not declare or pay taxes on the $3,000 per month payment and other payments received from Debtor pursuant to Section 8.B of the Agreement (collectively, "Buyout Payments" or "Buyout Obligation").

12. Jones testified that the monthly payment of $3,000 per month was for her support but also to purchase her interest in the business.

13. Debtor testified that at the time of the divorce, he believed his $1,700 per month alimony payment was intended for her support to assist with her monthly living expenses and that the $3,000 per month payment was to purchase her interest in the business.

14. After the execution of the Agreement and until approximately 2009, the business was profitable and Debtor regularly made the Buyout Payments to Jones. Debtor testified that his log home business has significantly declined since 2009 and is presently insolvent. As a result of the decline in business, Debtor testified that he has

4

been unable to make the Buyout Payments to Jones. He testified that if the business was shut down and its debts were paid from its remaining assets, there would be no money left in the business for distribution to shareholders.

15. Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 27, 2012.

16. Debtor filed a chapter 13 plan on May 14, 2012, which was subsequently amended on July 2, 2012, July 9, 2012, and August 7, 2012 (together with the amendments, the "Plan"). The Plan before the Court does not provide for payment of Jones's claim as a domestic support obligation.

17. On June 8, 2012, Jones filed the Objection to Confirmation.

18. On June 29, 2012, Jones filed a proof of claim in the amount of $317,195.41, with arrears in the amount of $44,195.41, which she asserts is an unsecured claim entitled to priority as a "domestic support obligation," as defined by 11 U.S.C. § 101(14A).

19. On July 2, 2012, Debtor filed the Claim Objection.

20. At the hearing, the parties agreed that if the Buyout Obligation was determined to be non-dischargeable, the Plan would not be feasible and could not be confirmed.

## CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 523(a)(5),[2] a discharge under § 1328(b) does not discharge a debtor from any debt for a "domestic support obligation," which is defined in § 101(14A) as follows:

---

[2] Further references to the Bankruptcy Code shall be by section number only.

5

> The term "domestic support obligation means a debt that accrues before, on, or after the date of the order for relief in a case under this title..., that is—
> (A) owed to or recoverable by—
>   (i) A spouse, former spouse, or child of the debtor or such child's parent, legal guardian or responsible relative; or (ii) governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>   (i) a separation agreement, divorce decree, or property settlement agreement;
>   (ii) an order of a court of record; or
>   (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

A domestic support obligation is entitled to priority treatment pursuant to § 507(a)(1)(A), and a debtor's chapter 13 plan must provide for full payment of such an obligation pursuant to § 1322(a)(2). However, other types of debts incurred by a debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order, including property settlements, are dischargeable in a chapter 13 case. See 11 U.S.C. § 1328(a)(2); 11 U.S.C. § 523(a)(15); see also In re Priester, C/A No. 11-2130, slip op. (Jul. 22, 2011) ("In a chapter 13 case, obligations such as a marital property settlement are not entitled to full priority and are dischargeable.")

6

The primary issue before the Court is whether the Buyout Obligation owed to Jones is a domestic support obligation entitled to priority treatment under § 507(a)(1).[3] Debtor asserts that the Buyout Obligation is a property settlement, not a domestic support obligation as defined by § 101(14A), and is not entitled to treatment as a priority claim. Instead, Debtor argues that the claim should be allowed as a general unsecured claim without priority in the amount of $317,195.41. Jones contends that the language of the Agreement indicates that the parties intended the Buyout Payments to be in the nature of alimony, maintenance, or support payments and thus they are entitled to priority treatment as domestic support obligations under § 507(a)(1). Since the Plan does not provide for treatment of her claim as a domestic support obligation, Jones further argues that confirmation should be denied.

Federal bankruptcy law governs the determination of whether a debt is in the nature of alimony, maintenance, or support. In re Johnson, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008) (citing In the Matter of Long, 794 F.2d 928, 930 (4th Cir. 1986) (other citations omitted)). The determination of whether a debt is in the nature of alimony, maintenance or support depends on the intent of the parties and thus requires a fact specific analysis. Tilley v. Jesse, 789 F.2d 1074, 1078 (4th Cir. 1986); In re Baker, 274 B.R. 176, 189 (Bankr. D.S.C. 2000). When making this determination, the following non-exclusive factors should be considered:

(1) the actual substance and language of the agreement;

(2) the financial situation of the parties at the time of the agreement;

---

[3] In their Joint Statement of Dispute, the parties also raised the issue of whether the Buyout Obligation was a secured claim. At the hearing, Debtor's counsel indicated that Debtor included a motion to value the obligation at zero in the Plan out of an abundance of caution. No evidence was presented to indicate that the Buyout Obligation was secured. In addition, the proof of claim filed by Jones asserts an unsecured claim.

7

>    (3) the function served by the obligation at the time of the agreement; and
>
>    (4) whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse.

In re Baker, 274 B.R. 176, 189 (Bankr. D.S.C. 2000) (citing Catron v. Catron (In re Catron), 164 B.R. 912 (E.D.Va. 1994), aff'd 43 F.3d 1465 (4th Cir. 1994)). Other factors that have also been considered when determining the nature of an obligation include the tax treatment accorded to the obligation and whether the obligation terminates on the death or remarriage of the beneficiary. See Kinder v. Kinder (In re Kinder), C/A No. 02-10519-W, Adv. Pro. No. 02-80342-W, slip op. at 5 (Bankr. D.S.C. Feb. 10, 2003) (also considering tax treatment of obligation as factor); In re McCollum, 415 B.R. 625 (Bankr. M.D. Ga. 2009) (also considering tax treatment of obligation, whether obligation is modifiable and whether obligation terminates on death or remarriage). In the Fourth Circuit, the primary focus of the analysis is whether the parties mutually intended to create a support obligation at the time of the divorce or separation. Tilley, 789 F.2d at 1078 (stating that "intent clearly remains the threshold that must be crossed before any other concerns become relevant"). Labels attached to provisions of a separation agreement are persuasive evidence of the parties' intent, but are not controlling. Id. at 1077-78. This task is made more difficult when the domestic agreement includes inconsistent terminology and the evidence is contradictory, as in this case.

**I.    Waiver of discharge**

In this case, the unusual issue presented by the parties is the inclusion and effect of an express provision in the Agreement that anticipates and attempts to control the consequences of a bankruptcy filing by Debtor and attempts to bind the Court to a finding

8

that the Buyout Obligation is nondischargeable under certain circumstances. Specifically, the Agreement provides that "husband's obligation to wife as contained in [Section 8.B] shall continue should the husband file bankruptcy..." and that "the parties acknowledge that the same are a source of support to the wife which will assist her in meeting her monthly expenses; therefore, they are not dischargeable in bankruptcy, except as specifically provided...." These provisions are inconsistent with other express language in the Agreement indicating this obligation is in the nature of a property settlement. Considering these provisions in connection with the other language of the Agreement and the evidence presented at the hearing, the Court finds that these provisions constitute an invalid prepetition waiver of discharge and should not be considered dispositive on the issue of dischargeability of this obligation. See Lewis v. Trump (In re Trump), 309 B.R. 585, 593 (Bankr. D. Kan. 2004) (stating that prepetition agreements to waive the benefits of a bankruptcy discharge are void, and the court is not bound by language in a separation agreement that purportedly bars discharge); In re Daniel, 290 B.R. 914 (Bankr. M.D.Ga. 2003) (concluding that a waiver of discharge in a divorce-related settlement agreement is not dispositive regarding dischargeability of a debt); In re Wood, No. 11-06583-8-JRL, 2012 WL 14270 (Bankr. E.D.N.C. Jan. 4, 2012) (finding that a provision of a marital property agreement that stated that the parties specifically waived spousal support, but allowed the non-bankrupt spouse to petition a court of competent jurisdiction for spousal support in an amount sufficient to cover any obligation discharged in a subsequent bankruptcy filing by the other spouse was an invalid prepetition waiver of discharge and undermined the purpose of the Code to give an honest but unfortunate debtor a fresh start) (citing Hayhoe v. Cole (In re Cole), 226 B.R. 647, 654 (B.A.P. 9th Cir. 1998));

Tamasco v. Nicholls (In re Nicholls), Adv. No. 10-8186-DTE, 2010 WL 5128627 (Bankr. E.D.N.Y. Dec.10, 2010) (finding that "a majority of courts have held that a prepetition waiver of discharge is against public policy and cannot be enforced"). The parties' attempt to control the outcome of a Bankruptcy Court's determination in a future bankruptcy filing by contract is against public policy since it undermines the fresh start provisions of the Bankruptcy Code. In re Lucas, ___ B.R.___, 2012 WL 3306994 (Bankr. M.D.Ala. Aug. 1, 2012) ("Courts have long established that a stipulation to the effect that a debt will not discharge in a future bankruptcy case is not enforceable as it is against public policy."); Hayhoe v. Cole (In re Cole), 226 B.R. at 654 (concluding that "a prepetition waiver of the dischargeability of a debt undermines the purpose of the Code to give an honest but unfortunate debtor a fresh start"). To the extent that Jones argues that the inclusion of this language indicates that the parties intended the Buyout Obligation to be in the nature of support, the Court finds that this argument is contradicted by other language of the Agreement indicating that the true nature of the obligation is that of a property settlement, as discussed more fully below.

**II.     Language of the Agreement**

As to the first factor set forth in Baker, both parties contend that the language of the Agreement supports their position regarding the characterization of the Buyout Obligation. Debtor argues the Agreement clearly delineates between the alimony, maintenance and support obligation; the division of their marital property; and the Buyout Obligation, by separating these obligations into distinct sections of the Agreement, labeled "Alimony and/or Separate Maintenance and Support," "Equitable Division," and "Business Interest and Buy-out," respectively. Debtor further argues that

10

the plain language of the "Business Interest and Buy-out" section indicates that the Buyout Obligation is in the nature of a property settlement by its express terms, which provide that "[b]y way of equitable division, in order to purchase the wife's interest in each of these entities, [Debtor] shall pay to [Jones] $3,000 per month...," and that "the [buyout] payments to the wife are intended as equitable division and are therefore non-taxable." In addition, the Agreement specifically provides that the Buyout Obligation could be discharged in a chapter 7 case, which Debtor argues is further support for a finding that the parties intended this obligation to be a property settlement.[4] As discussed above, Jones relies upon the parties' inclusion of the provision regarding dischargeability in Section 8.B as support for characterizing the Buyout Obligation as alimony, maintenance and support.

After reviewing the Agreement, the Court finds that the language contained therein best supports a conclusion that the true nature of the Buyout Obligation is that of a property settlement. The Court notes that the Agreement was drafted by Jones's counsel and both parties were represented by counsel during the negotiation and execution of the Agreement. The Court agrees with Debtor that the separation of Buyout Obligation in Section 8 from the alimony obligation provided in Section 3 the Agreement and the distinctive labeling of these obligations are facts, which, even if not dispositive,

---

[4] At the time the Agreement was drafted, property settlement agreements could be dischargeable in a Chapter 7 bankruptcy case pursuant to § 523(a)(15) if the debtor could demonstrate an inability to pay the property settlement obligation. The version of § 523(a)(15) in effect in 2004 provided that:
> [A] discharge under section ... 1328(b) ... does not discharge an individual debtor from any debt not of the kind described in paragraph (5) [in the nature of alimony, maintenance, or support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record... *unless—*
> *(A) the debtor does not have the ability to pay such debt ...*; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of debtor.
> (emphasis added).

11

weigh in favor of a finding that the Buyout Obligation is a property settlement. See Tilley, 789 F.2d at 1077-78 (finding that a well structured settlement agreement that purports to deal with separate issues in totally distinct segments of the document creates a substantial obstacle to overcome for the spouse with the burden of proving nondischargeability, with respect to the segments that purport to deal with a property settlement); Breibart v. Breibart (In re Breibart), C/A No. 03-07440-W, Adv. Pro. No. 04-80195-W, slip op. at 9 (Bankr. D.S.C. Mar. 22, 2005). The express statements in Section 8.B that "[*b*]*y way of equitable division*, in order to purchase the wife's interest in each of these entities, [Debtor] shall pay to [Jones] $3,000 per month..., and that "the [Buyout Payments] to the wife are *intended as equitable division*" provide further support for a finding of a property settlement (emphasis added). In addition, the testimony of both parties at the hearing supports a conclusion that these payments were intended to purchase Jones's interest in the business that she helped establish. As discussed above, the Court finds that the parties' inclusion of the invalid provision regarding dischargeability in the Agreement is not dispositive on the issue of intent.

### III.     Financial Situation of the Parties

A demonstration that the domestic support claimant had a need for support at the time the agreement was entered into is persuasive evidence that the obligation was intended to be in the nature of alimony, maintenance or support. See Pagels v. Pagels (In re Pagels), Adv. No. 10-07070-SCS, 2011 WL 577337, at *13 (Bankr. E.D.Va. Feb. 9, 2011). The parties testified that at the time of the separation and divorce, Debtor earned more income than Jones. Both parties agree that the alimony payments of $1,700 per month were intended as support and that they both anticipated that Jones would have to

12

work to meet her monthly expenses. Jones testified that at the time the agreement was executed, she was working at a flower shop, earning approximately $975 per month. She had a mortgage payment of $604 and a car payment of $650. Combining her alimony and income from her job, she had a total income of approximately $2,675 per month, leaving her with approximately $1,421 per month to meet her other expenses. Without specifying the details of those expenses, Jones testified that her monthly expenses were between $3200 and $3300. Jones testified that the Buyout Payments were intended to help her meet her monthly expenses, as stated in the Agreement, and also to purchase her portion of the business. Debtor testified that he intended the Buyout Payments as a means of equitably dividing their marital assets, as stated in the Agreement.

Considering the testimony and evidence presented, the Court finds insufficient evidence to indicate that, at the time the Agreement was entered into, the parties anticipated that Jones's monthly employment income plus her alimony income would be inadequate to meet her monthly expenses. The Agreement expressly provides that "the parties anticipate that the wife will have to work in order to meet her monthly needs and *shortfall after the payment of alimony* by the husband." The Agreement plainly contemplates the existence of a shortfall that Jones was expected to meet through work. However, if the Buyout Payments were considered as support and included in this calculation, no shortfall would result. The Court is unable to conclude from the evidence presented that the Buyout Payments were necessary to provide additional support. Therefore, this factor weighs in favor of a finding that the Buyout Obligation is in the nature of a property settlement.

13

### IV.     Function Served by the Obligation

When examining the function of the obligation at the time of the agreement, the Court should consider whether the obligation was intended to provide such daily necessities as food, clothing, shelter, and transportation. If so, then the obligation is likely in the nature of support. See Breibart, C/A No. 03-07440-W, Adv. Pro. No. 04-80195-W, slip op. at 17; Pagels, 2011 WL 577337, at * 14. As discussed above, the parties disagree regarding the function served by the Buyout Obligation. Jones argues that the Buyout Obligation serves a dual purpose: (1) to provide additional support to help her meet her monthly expenses and (2) to purchase her interest in the marital business. Debtor argues that the Buyout Payments merely serve as property settlement payments. The language of the Agreement regarding the function of the Buyout Payments is likewise inconsistent. However, the Court observes that the alimony payments provided in the Agreement combined with her employment income appear to be sufficient to provide Jones with the daily necessities of food, clothing, shelter, and transportation. Jones's testimony that her expenses at the time of the agreement exceeded her monthly employment income plus her alimony income was unsupported and therefore unconvincing. Considering all of the evidence presented, it appears that the ultimate function of the Buyout Obligation was to "buy out" Jones's interest in the marital business. Accordingly, the Court finds that this factor weighs in favor of a finding that the Buyout Obligation is in the nature of a property settlement.

### V.     Evidence of Overbearing

As to the fourth factor, "if a spouse's will has been overborne, that spouse could not intend to enter either a property settlement or support agreement, and the creditor

spouse cannot meet its burden of proving that the spouses' intent was to enter a nondischargeable support agreement." Pagels, 2011 WL 577337, at *13 (quoting Kettner v. Kettner, No. 91-587-N, 1991 WL 549386 (E.D.Va. Nov. 19, 1991)). Since both parties were represented by counsel during the negotiation and drafting of the Agreement and no evidence was presented to indicate that either spouse's will was overborne or that either party engaged in overbearing conduct, the Court finds that this factor is neutral.

## VI.  Other Factors

There are two other factors that weigh in favor of a conclusion that the Buyout Obligation was intended as a property settlement and not as alimony, maintenance, or support.  First, the Agreement specifically provides that the Buyout Payments are not taxable to Jones.  As stipulated, Jones never declared these payments as income on her income tax returns.  Debtor did not claim a deduction for the Buyout Payments as alimony pursuant to federal income tax law. [5]  This factor supports a finding that the parties intended these payments to serve as a property settlement.  See McCollum, 415 B.R. at 633 (finding that the debtor's failure to claim a deduction for the payments as alimony was evidence that the parties did not intend the payments to serve as support); Kinder, C/A No. 02-10519-W, Adv. Pro. No. 02-80342-W, slip op. at 5 (finding that the obligation should be treated as nondischargeable support where the debtor treated the obligation as alimony on his tax returns).  Second, unlike the alimony payments, the

---

[5] Debtor further argues that Jones should be estopped from asserting the payments are in the nature of alimony by virtue of her tax treatment of those payments over the past seven years, since both parties would be required to go back and amend seven years of tax return if the obligation was recharacterized, citing In re Robb, 23 F.3d 895 (4th Cir. 1994). In In re Robb, the Fourth Circuit quoted the Fifth Circuit's statement in Matter of Davidson, 947 F.2d 1294, 1296 (5th Cir. 1991), that "to allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes." The Court agrees and finds that this argument is further support for its conclusion that the Buyout Obligation should be treated as a property settlement obligation.

Buyout Payments were not subject to termination based upon the remarriage of Jones or death of Jones or Debtor. This factor also supports a finding that the Buyout Payments were not intended as alimony, maintenance, or support. See McCollum, 415 B.R. at 633 (stating that the most important factor in its conclusion that the payments were not intended by the parties as support was that the language of the agreement contemplated full payment without regard to the spouse's death or remarriage); Priester, C/A No. 11-02130-JW, slip op. at 8 (finding that the absence of a termination upon remarriage or death provision regarding the payments was evidence that the parties intended the obligation as a property settlement).[6]

## CONCLUSION

Considering all of the foregoing factors, the Court finds that the weight of the evidence supports the conclusion that the Buyout Payments were intended as a property settlement and not as alimony, maintenance, or support. Therefore, it is ordered that Debtor's Objection to Claim is sustained and that Jones's Objection to Confirmation is overruled. The proof of claim filed by Jones may be treated as an unsecured claim without priority.

**AND IT IS SO ORDERED.**

---

[6] While not a formal factor, the Court further notes that Debtor's business has suffered a significant decline over the past several years such that the business has not been and is not now profitable. Debtor testified that if the business was shut down and its debts were paid, there would be no money left over for him as shareholder. Jones was paid regularly pursuant to the Agreement while the business was profitable for a number of years following the execution of the Agreement. The failure of the business has equally hurt Debtor and Jones financially. Therefore, it appears that a finding that the Buyout Obligation is a dischargeable property settlement would not result in a windfall to Debtor.

16